ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY - 3 2016
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:15-CR-0164-B |
| AYITEY AYAYEE-AMIM, a/k/a Sam, a/k/a Kwame, a/k/a Pastor Kwame, a/k/a Man of God (02)<br>MICHAEL UMUNNAKWE (03)<br>ELIZABETH UWAGBOI-UGBECHE (04)<br>OLUSOLA ADEREMI AKINGBADE (05)<br>BYRON FELTON CONNER (06) | (Supersedes Superseding Indictment returned September 1, 2015) |

SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to this Second Superseding Indictment:

General Allegations

The Medicare Program Generally

1. The Medicare Program (Medicare) was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Individuals receiving benefits through Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

Medicare-Covered Home Health Care Services

3. Medicare paid for certain skilled services performed in the home, commonly referred to as "home health care services," which were medically necessary.

According to 42 CFR § 409.42, for home health care services to be covered and therefore covered by Medicare, all of the following requirements had to be met:

    (a)    The beneficiary must have been confined to the home or an institution that is not a hospital or nursing facility (i.e., homebound);

    (b)    The beneficiary must have been under the care of a physician who establishes the plan of care;

    (c)    The beneficiary must have been in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology services, or continuing occupational therapy services;

    (d)    The beneficiary must have been under a plan of care that meets the requirements specified in 42 CFR § 409.43; and

    (e)    The home health care services must have been provided by, or under arrangements made by a participating home health care agency.

4.    In order for a patient to be eligible to receive Medicare-covered home health care services, the law required that a physician certify in all cases that the patient was confined to their home. The condition of the patient should have been such that there existed a normal inability to leave home and, consequently, leaving home would have required a considerable and taxing effort. If a patient did in fact leave the home, the patient may nevertheless have been considered homebound if the absences from the home were infrequent or for periods of relatively short duration, or were attributable to the need to receive health care treatment.

5.    Among the written records required to document the appropriateness of home health care claims submitted to Medicare were: (a) a signed certification by an attending physician certifying that the patient was confined to his or her home and was in

need of the planned home health care services; (b) a plan of care that included the physician order for home health care, diagnoses, types of services, frequency of visits, prognosis, rehabilitation potential, functional limitations, activities permitted, medications, treatments, nutritional requirements, safety measures, discharge plans, goals, and physician signature; and (c) an assessment of the beneficiary's condition and eligibility for home health services completed by the home health agency, called an Outcome and Assessment Information Set (OASIS).

6. Physicians and home health agencies typically used Form CMS-485 Home Health Certification and Plan of Care (CMS-485) prepared by the Centers for Medicare and Medicaid Services to satisfy the homebound certification and written plan of care requirements.

7. Medicare compensation to home health care agencies was based on the Prospective Payment System (PPS). Under this system, Medicare paid a home health care agency a base payment, which was adjusted based on the severity of the beneficiary's health condition and care needs. The PPS payment provided home health care agencies with payments for each 60-day episode of care for each beneficiary. If the beneficiary was still eligible for home health care after a home health episode, they may have been recertified for another 60-day home health episode. There was no limit to the number of home health episodes that a beneficiary could receive.

8. To obtain reimbursement from Medicare for home health care services provided to beneficiaries, home health care agencies were required to submit claims that were accurate, complete, and truthful.

## Paradise Home Health Agency

9. Paradise Home Health Agency (Paradise) was an approved home health agency in the Medicare system, owned and operated by Theophilus Adeoye (Adeoye), a Licensed Vocational Nurse.

10. The defendants and their coconspirators caused Paradise to submit false and fraudulent claims to Medicare for home health care services on behalf of Medicare beneficiaries who were not homebound or otherwise eligible for home health care services.

11. Paradise paid cash to Medicare beneficiaries, many of whom were not homebound or otherwise eligible for home health care services, to recruit and retain them as patients.

## The Defendants

12. **Byron Felton Conner**, a resident of North Richland Hills, Texas, worked with At Home Visiting Physicians (AVHP) as a contract physician from approximately March 2012 through at least September 2015. **Conner** was an approved provider in the Medicare program. **Conner** knowingly and willfully signed CMS-485s on behalf of beneficiaries who were not homebound, not in need of skilled nursing services, and not otherwise eligible to receive Medicare-covered home health care. **Conner** signed CMS-485s that contained false information, and knew that they would be used by Paradise to support and justify claims Paradise submitted to Medicare.

13. **Elizabeth Uwagboi-Ugbeche (Ugbeche)**, a resident of Grand Prairie, Texas, worked at Paradise from approximately the spring of 2010 through October 2014.

Second Superseding Indictment - Page 4

**Ugbeche**, a registered nurse, served in various roles at Paradise including quality assurance, field nurse, and Director of Nursing. **Ugbeche** falsified documents to support and justify claims Paradise submitted to Medicare on behalf of non-homebound patients. **Ugbeche** knew that Paradise paid cash kickbacks to patients.

14. **Olusola Aderemi Akingbade (Akingbade)**, a resident of Grand Prairie Texas, worked at Paradise from approximately the spring of 2011 through October 2014. **Akingbade**, a registered nurse, served in various roles at Paradise including field nurse and Director of Nursing. **Akingbade** falsified documents to support and justify claims Paradise submitted to Medicare on behalf of non-homebound patients.

15. **Ayitey Ayayee-Amim**, a/k/a Sam, a/k/a Kwame, a/k/a Pastor Kwame, a/k/a Man of God (**Amim**), a resident of Irving, Texas, worked at Paradise from approximately the summer of 2010 to the fall of 2011. **Amim** recruited new patients and paid cash kickbacks to established patients.

16. **Michael Umunnakwe (Umunnakwe)**, a resident of Grand Prairie, Texas, worked at Paradise from approximately late 2012 to June 2014, first as an office clerk and later as a certified nurse's aide. **Umunnakwe** submitted electronic claims to Medicare and paid cash kickbacks to patients.

## Count One
## Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

17. Paragraphs 1 through 16 of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

18. From in or around January 2009, through in or around November 2014, in the Dallas Division of the Northern District of Texas and elsewhere, **Amim**, **Umunnakwe**, **Ugbeche**, **Akingbade**, and **Conner**, together with their coconspirators who are not named as defendants in this Second Superseding Indictment, did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to violate 18 U.S.C. § 1347, that is, to knowingly and willfully devise and execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, the health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

### Purpose of the Conspiracy

19. It was a purpose of the conspiracy for the defendants and their coconspirators to unlawfully enrich themselves through, among other things: (a) submitting and causing the submission of false and fraudulent Medicare claims for home health care services, (b) offering to pay and paying kickbacks to Medicare beneficiaries in exchange for arranging home health care services through Paradise in

violation of 42 U.S.C. § 1320a-7b(b)(2); and (c) concealing the submission of false and fraudulent claims to Medicare and the payment of kickbacks.

## Manner and Means of the Conspiracy

20. The manner and means by which the defendants and their coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

## The Scheme to Defraud

21. It was part of the scheme to defraud for the defendants and their coconspirators to knowingly and willfully submit and cause to be submitted to Medicare, false and fraudulent claims for home health care services on behalf of Medicare beneficiaries who were not homebound or otherwise eligible for home health care service, claims for services that were not provided, and claims for services that were not provided by requisitely licensed and qualified individuals.

22. The defendants and their coconspirators knew that many of the beneficiaries enrolled as patients of Paradise were not homebound, not in need of skilled nursing services, not under the care of the physician who established the plan of care, and not otherwise eligible to receive Medicare-covered home health care.

23. The defendants and their coconspirators worked together to create CMS-485s, OASIS forms, and other paperwork with false information to make patient files appear complete and to support and justify the claims Paradise submitted to Medicare. The defendants and their coconspirators referred to the process of falsifying patient records as "quality assurance."

24. As part of the false and fraudulent billing process, **Conner** knowingly and willfully signed CMS-485s that contained false information, including plans of care that he did not establish, which he knew would be used by Paradise to support and justify claims for home health care services submitted to Medicare.

25. As part of the false and fraudulent billing process, **Ugbeche** performed "quality assurance" checks on patient files for patients she knew were not homebound or otherwise eligible to receive Medicare-covered home health care services. As part of the patient certification and recertification process, **Ugbeche** signed CMS-485s and OASIS forms, which fraudulently represented patients' health conditions, and which were used to support and justify claims submitted for patients she knew were not homebound.

26. As part of the patient certification and recertification process, **Akingbade** signed CMS-485s and OASIS forms, which fraudulently represented patients' health conditions, and which were used to support and justify claims submitted for patients he knew were not homebound or otherwise eligible to receive Medicare-covered home health care services. At times, **Akingbade** would complete and sign such forms without actually visiting the patient.

27. As part of the false and fraudulent billing process, **Amim** and two of Adeoye's minor children fabricated nursing notes and performed "quality assurance" checks on patient files at Theophilus' direction.

28. For the fraudulent billing scheme to expand and continue, the defendants or their coconspirators paid cash kickbacks to Medicare beneficiaries to recruit and retain them as patients of Paradise. Adeoye instructed his coconspirators, including **Amim** and

**Umunnakwe** to make these payments. At times, Adeoye made the payments himself. In each case, Adeoye determined how much each patient should be paid and how often. Patients were typically paid $200 upon enrollment with Paradise and $40 twice per month thereafter. For example, on approximately three or four occasions between July 20, 2010, and November 28, 2012, the exact dates being unknown to the Grand Jury, **Amim** paid Medicare beneficiary A.D. $40 in exchange for ordering home health services from Paradise. And on approximately one occasion between September 14, 2009, and December 10, 2012, the exact date being unknown to the Grand Jury, **Amim** paid Medicare beneficiary E.F. approximately $20 or $30 in exchange for ordering home health services from Paradise

29. Adeoye, **Umunnakwe**, **Amin**, and their coconspirators instructed the Medicare beneficiaries directly and indirectly not to tell anyone about these cash payments and to avoid talking about the payments over the telephone. For example, on or about July 16, 2010, **Amim** spoke by telephone with Medicare beneficiary C.G. in an attempt to recruit C.G. as a patient of Paradise, and indirectly discouraged him from talking about monetary payments over the phone stating, "I don't want to talk about it on the phone because I don't know who is listening to me, you see what I mean." On or about March 21, 2013, **Umunnakwe** spoke to Medicare beneficiary P.K. by telephone. P.K. called Paradise to complain about not receiving one of her cash payments from Paradise. **Umunnakwe** instructed P.K. not to talk about those payments over the telephone.

30. During the period of the conspiracy, the defendants and their coconspirators caused Paradise to submit more than $3.5 million in false and fraudulent claims to Medicare for home health care services.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

## Counts Two through Nine
## Health Care Fraud and Aiding and Abetting
(Violation of 18 U.S.C. §§ 1347 and 2)

31. Paragraphs 1 through 30 of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

32. On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, defendants **Ugbeche**, **Akingbade**, and **Conner**, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendants submitted, and aided and abetted in submitting, false and fraudulent claims to Medicare, seeking reimbursement for the cost of various unnecessary home health services, each claim submitted to Medicare for a 60-day home health episode being a separate count:

| Count | Defendant | Medicare Beneficiary | False / Fraudulent Representation(s) | Approximate Date | Approximate Amount Submitted to Medicare |
|---|---|---|---|---|---|
| 2 | Ugbeche | D.R. | OASIS-C Recertification | 05/07/2011 | $1,094.39 |
| 3 | Akingbade | D.R. | OASIS-C Recertification | 09/06/2011 | $1,200.00 |
| 4 | Akingbade | M.W. | OASIS-C Start of Care | 02/15/2013 | $1,520.00 |
| 5 | Ugbeche | M.W. | OASIS-C Recertification | 04/12/2013 | $1,814.56 |
| 6 | Conner | M.W. | CMS-485 | 09/20/2013 | $2,014.57 |

| Count | Defendant | Medicare Beneficiary | False / Fraudulent Representation(s) | Approximate Date | Approximate Amount Submitted to Medicare |
|---|---|---|---|---|---|
| 7 | **Akingbade** | E.E. | OASIS-C Recertification | 02/12/2014 | $2,014.57 |
| 8 | **Ugbeche** | E.E. | OASIS-C Recertification | 04/14/2014 | $2,014.48 |
| 9 | **Conner** | E.E. | CMS-485 | 02/27/2014 | $2,014.48 |

All in violation of 18 U.S.C. §§ 1347 and 2.

## Forfeiture Notice
## (18 U.S.C. § 982(a)(7))

33. Upon conviction of any offense alleged in this Second Superseding Indictment, and pursuant to 18 U.S.C. § 982(a)(7), **Amim**, **Umunnakwe**, **Ugbeche**, **Akingbade**, and **Conner** shall forfeit to the United States any property, real or personal, constituting or derived from, directly or indirectly, the gross proceeds traceable to the commission of the offense.

34. The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

## Substitute Assets

35. Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-described property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described property subject to forfeiture.

A TRUE BILL.

_____
FOREPERSON


JOHN R. PARKER
UNITED STATES ATTORNEY


_____
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8604
Facsimile:   214-659-8802
douglas.brasher@usdoj.gov

Criminal Case Pending: 3:15-CR-164-B



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

AYITEY AYAYEE-AMIM,
a/k/a Sam, a/k/a Kwame, a/k/a Pastor Kwame, a/k/a Man of God (02)
MICHAEL UMUNNAKWE (03)
ELIZABETH UWAGBOI-UGBECHE (04)
OLUSOLA ADEREMI AKINGBADE (05)
BYRON FELTON CONNER (06)

SECOND SUPERSEDING INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

18 U.S.C. §§ 1347 and 2
Health Care Fraud and Aiding and Abetting

18 U.S.C. § 982(a)(7)
Forfeiture

9 Counts

A true bill rendered

-------------------------------------------------------------------------
DALLAS                                                        FOREPERSON

Filed in open court this 3rd day of May, 2016.

-------------------------------------------------------------------------

**Warrant to be Issued as to defendant Byron Felton Connor (06) – All other defendants on bond since 5/8/2015**

-------------------------------------------------------------------------
UNITED STATES MAGISTRATE JUDGE